Good morning. May it please the Court, my name is Robert Shaw. It's my privilege to appear this morning on behalf of Nam Tham. If I may reserve two minutes, Your Honor. I'd like to begin, if I could, by framing the core issue, or I should say really reframing it. I do so very narrowly, and the Court may have noted from review of the briefs that I define the confrontation issue on behalf of Mr. Tham somewhat differently than Petitioner Tran. The fundamental issue concerns the fact that the government was permitted to assert the source and nature of two pieces of paper that were in possession of the prosecutor without competent probative evidence to demonstrate those assertions. There was no foundation of knowledge about the source and nature of these documents from the witness, the single witness that the government called. And as we know, there was no other evidence. Typically we would have a stipulation or there would be a subpoena and a certification. We don't have those here. So the fundamental problem is that the assertions regarding the source and nature of these pieces of paper were insulated from confrontation because there was no ability, no evidence to confront. There was no opportunity to confront, but the assertions were made nonetheless. So I think it's very important to also look at what the issue is not. The confrontation issue is not, is a flight manifest a business record, generally speaking. The issue is not, is a ticket inquiry a business record, generally speaking. The issue isn't even is there hearsay within business records. Those questions all presume the nature and the source of these pieces of paper and what I'm suggesting is that we are upstream of that. Now, so he tried to do what you said he had to do by saying, I work for the airline, I know what stuff looked like there, I know what the systems, why they generated this stuff, and when I look at this piece of paper that I didn't generate and I don't know who generated it and it was generated a long time ago, but it looks just like what our system would put out. That's correct. That's what he did. Now, court then rules that's enough to authenticate it. You've got him there to cross-examine on that whole spiel. What's the constitutional problem then, even if we assume that the court erred in saying that was enough to authenticate it? The constitutional problem is that he is, by doing that, the assertion is being made as to the source and nature of these documents. Right, but he's right there to cross-examine. He's not saying, he's not coming in and saying, I know a guy, Joe, and Joe told me that he's familiar with the way the airline did it and they did it this way and that's why it's authentic. He's testifying personally as to his own knowledge. You may contest whether that's adequate to authenticate, but it's clearly his own knowledge. But his own knowledge is only limited to the text on the page. It's only limited to the will come into court and an expert coming in who's an expert on wills to look at the piece of paper and say, well, I'm an expert on wills. That looks like a will. Therefore, I want to introduce this as Mr. X's will. We could never do that. One could never do that. There needs to be the... I'm not saying the court did it. What's the constitutional problem? The constitutional problem is that for the person who is challenging that, there is no ability to get to the actual source of the papers that are being presented. The source and nature of those particular pieces of paper. Because again, we're not dealing in generalities with is this a flight manifest and let's talk about what a flight manifest looks like and typically how a flight manifest is generated. But here, we're talking about these particular pieces of paper that the prosecutor appears in court with and he holds them up and he introduces those. Where did they come from? Who produced them? Who were they given to? What was the communication at that time? And one would suppose that there is some communication at that time. That type of communication, which concerns information about what this is, is testimonial. And the federal district court in this case acknowledged that, that those are testimonial assertions. The district court ruled, I think, improperly that given the fact that there was no statement about the source and nature and that he just testified without knowledge about the appearance, then there is no confrontation issue because there's no testimonial statement. So we run into this fundamental problem that the assertions are being made, both through the witness that was called, despite the fact that he has no knowledge. And as I've also indicated in my brief, there is this issue of the fact that the government is essentially making these assertions and doing so through the production and presentation of the papers. Interestingly enough, at every stage of these proceedings in the state courts, in the federal district court, and even here, the assumption of the Attorney General is that we are dealing with a flight manifest and a ticket inquiry. And the Attorney General's arguments in its brief, I would suggest, presume that. That is inherent to every one of the arguments that are being made. And what I'm suggesting to the court is that it is necessary to ask the question upstream of that. How do we even establish where these came from? How do we establish what they are? There was no basis of knowledge, no ability to confront on that issue. I see my time is up. Thank you. Thank you. Good morning. I please the Court. My name is Thomas Boshin. I represent the respondent, Lisa Mitchell. I'd like to begin with the argument that was just made. It sounded like the contention was that Conorino's testimony was invalid because he wasn't there at the time the record was created, that is, that the information was given to the airline. I direct this Court to its own opinion in the United States v. Cameron case that the petitioner cited footnote 10 in the course of the confrontation clause analysis says that the author of the document, that was a Yahoo record, didn't need to be there. Lieberman agrees with that, cited in the brief, and so does the Merrim decision. So the SJC's decision in that regard, to the extent it didn't require the author to be there, is in good company. The second point I'd make is that both petitioners here seem to be suggesting that Conorino wasn't credible. He testified that he recognized the documents, the type of document, that they bore these unique markers, and that they were the types of documents that were still in use by United Airlines even at the time of trial. The only difference he found was a font difference, but he explained that that's because the airline had switched to a laser printer from the ribbon printers that it used before. The petitioners don't find him credible because of the very good cross-examination that their lawyers did at United Airlines, that that's not the way to secure habeas relief. They can't ask this court to make a different credibility determination in order to get 2254 relief. Unless the court has questions, the respondent will rest on its brief. So I don't – it's clear that the person who makes the record, that person's presence is not necessary in court, but counsel seems to be arguing something a little bit different, which is generally when you have a keeper or someone with knowledge come in, that business record is generated by the business and either brought into court or delivered to someone, and that person can say, okay, I know it's a business record because I retrieved it from our business files, and these records are kept in the ordinary course, and I can attest that these are kept, made by someone with personal knowledge, et cetera. We have a whole business record. And so it's not a missing level because somehow they turned up with the prosecution from somewhere and we don't know where they came from. But Contrino provided the necessary foundation for the documents by explaining that he recognized all of these many different identifiers that were on them. For example, that 016 was the number that the tickets begin with that's unique to United Airlines. He explained that the format was generated by this Apollo computer system in which United has proprietary rights because of certain passenger secrecy information. He explained that he could tell the type of aircraft. It was the same type of aircraft then as it was at the time of his trial testimony, and he explained that he had seen hundreds of both of these types of documents over the course of his employment because he had begun as a gate agent literally printing off-flight information that would allow the jury and the... I guess what counsel is arguing is that yes, he said they look similar to the documents generated by the airline, but how can you guarantee the integrity essentially of these particular documents, particularly when they can be so easily manipulated? I'll make two points. First, to the extent that the documents were unreliable, if that's sort of where the question is going, that would be a different issue than the Sixth Amendment issue that's here. And the second point I'd make is that even if the court is skeptical about the SJC's authenticity ruling or business record ruling, the essential inquiry is whether this is testimonial and hearsay. If it's not either of those, that will end up being a confrontation inquiry. Hence, there's no evidence in the record to suggest that this was made with an eye towards criminal prosecution, that either of these two documents were made with an eye towards litigation or criminal prosecution. So even if there wasn't, and I certainly don't suggest that there was, but even if there was an error of state law in the authentication question, the constitutional question was reasonably resolved. Thank you. Judge Thompson, focusing on what you've raised, I think that is exactly the issue. And the notion that these were not made with an eye toward prosecution simply begs the question. Again, that presumes and assumes that we're dealing with a flight manifest that was made by a particular business. And the whole point here is that these pieces of paper, and let's be clear, we don't have a flight manifest. We have a single piece of paper that the prosecutor asserts is part of a bigger document that we don't have, and we have no link that goes back to a particular business. We have no information about who gave these over. We have no information about what was communicated. We have no information about the circumstances under which these documents were produced. With respect to the issue of hearsay, the trial judge gave a limiting instruction prohibiting consideration of the documents for the truth of the matter asserted. I suggest that that is very incorrect. The instruction directed that the jury could receive the documents as evidence that persons, if not the defendants, were on the flights using the same names that the defendants have. That is direct evidence for the truth of the matter asserted that there were people on those planes using the defendants' names, and I don't mean the defendants' names. I mean the same names, and the jury was free to use that evidence as evidence that it was the defendants, but it was circumstantial. It wasn't direct evidence of their identity. So the instruction, in fact, did not limit it to a non-testimonial purpose. With respect to prejudice, again, I just mentioned very briefly, this went up to single justice. It was very important. There is no evidence in this case that Mr. Tham had any association with these individuals apart from the conflicting testimony about the incident itself, but before and after, no information other than these documents. So the documents were extremely important. Thank you. Can I just ask, I don't care who answers, was there evidence at trial that they were extradited from Japan, I mean from China? I believe there was evidence that they went from China over to Hong Kong because there was nothing in the record to suggest that this was at all odd for them to have at some point gone back to their home country. Thank you.